IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE PROCEEDING IN WHICH THE | : | CIVIL ACTION |
| COMMONWEALTH OF PENNSYLVANIA | : | |
| SEEKS TO COMPEL THE DEFENDER | : | |
| ASSOCIATION OF PHILADELPHIA TO | : | |
| PRODUCE TESTIMONY AND DOCUMENTS | : | |
| AND TO BAR IT FROM CONTINUING TO | : | |
| REPRESENT DEFENDANT MITCHELL IN | : | |
| STATE COURT | : | NO. 13-cv-1871 |

**REPLY BRIEF IN SUPPORT OF THE COMMONWEALTH'S MOTION TO REMAND**

Peter Carr
Assistant District Attorney
Hugh J. Burns, Jr.
Chief, Appeals Unit
PHILADELPHIA DISTRICT ATTORNEY'S OFFICE
Three South Penn Square
Philadelphia, PA 19107
peter.carr@phila.gov
hugh.burns@phila.gov
(215) 686-5766
*Attorneys for the Commonwealth*

Date:   June 3, 2013

# CONTENTS

AUTHORITIES ................................................................................................................. ii

ARGUMENT IN REPLY ................................................................................................. 1

    I.    The FCDO fails to carry its burden to establish that its notice of removal was timely. ........................................................................................................................... 1

        A. The removed proceeding was initiated before the Common Pleas Court's scheduling order. ...................................................................................................... 1

        B. The FCDO was not entitled to wait more than 30 days after first receiving notice of the proceeding it wished to remove. ...................................................................... 3

    II.   Independent of the timeliness issue, the FCDO fails to carry its burden to establish that it meets the requirements for federal officer removal. ................................................. 6

        A. The FCDO concedes the factual premise of the Commonwealth's motion, and makes a legal argument that directly contradicts longstanding Supreme Court precedent. ................................................................................................................ 6

        B. The FCDO's position depends on mischaracterizing the Commonwealth's argument. ................................................................................................................ 8

        C. The FCDO fails to distinguish this case from other situations in which the Supreme Court has held that public defenders are not federal officers and do not act "under color of law." ............................................................................................. 13

    III.  The FCDO's response to the Commonwealth's abstention argument is unavailing. 14

CONCLUSION ............................................................................................................... 15

# AUTHORITIES

**Other Authorities**

*Colorado v. Symes*, 286 U.S. 510 (1932) .................................................................................. 11

*Ferri v. Ackerman*, 444 U.S. 193 (1979) .................................................................................. 13

*Harbison v. Bell*, 556 U.S. 180 (2009) ..................................................................................... 11

*Jefferson County v. Acker*, 527 U.S. 423 (1999) ............................................................ 9, 10, 14

*Local Union No. 38 v. Pelella*, 350 F.3d 73 (2d Cir. 2003) ......................................................... 1

*Maryland v. Soper*, 270 U.S. 9 (1927) .......................................................................... 6, 7, 8, 12

*McNeil v. United States*, 508 U.S. 106 (1993) ........................................................................... 1

*Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497 (8th Cir. 1992) .................................................... 14

*Mesa v. California*, 489 U.S. 121 (1989) ................................................................................... 7

*Mitchell v. Wetzel,* No. 11-cv-02063 ......................................................................................... 9

*Polk County v. Dodson*, 454 U.S. 312 (1981) .......................................................................... 13

*Steel Valley Author. v. Union Switch and Signal Div.*, 809 F.2d 1006 (3d Cir. 1987) ................... 1

*United States v. $8,221,877.16 in United States Currency*, 330 F.3d 141 (3d Cir. 2003) .............. 1

*Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998) ............................... 1

*Younger v. Harris*, 401 U.S. 37 (1971) .................................................................................... 14

**Statutes**

28 U.S.C. § 1442 .................................................................................................................. 9, 10

28 U.S.C. § 1446 ............................................................................................................... passim

**Other Authorities**

Franklin D. Cleckley, *Clearly Erroneous: The Fourth Circuit's Decision to Uphold Removal of a State-Bar Disciplinary Proceeding Under the Federal-Officer Removal Statute*, 92 W. Va. L. Rev. 577 (Spring 1990) .......................................................................................................... 14

**ARGUMENT IN REPLY**

I. **The FCDO fails to carry its burden to establish that its notice of removal was timely.**

   A. **The removed proceeding was initiated before the Common Pleas Court's scheduling order.**

In the FCDO's principal attempt to meet its burden to demonstrate that it filed a timely notice of removal,[1] it argues that the "proceeding" at which it was to produce documents or testimony was not "instituted"—and, hence, the FCDO did not have notice of said proceeding—until April 3, 2013, when the Court of Common Pleas set a date for the hearing that had been ordered three months earlier by the Pennsylvania Supreme Court (and precipitated by the disqualification motion filed four-and-one-half months earlier). *See* Dkt No. 25 (FCDO Response), p. 16 ("The April 3, 2013 Scheduling Order was the first notice received by the FCDO of a proceeding that actually required the FCDO to produce testimony and/or documents"); *id*. at 17 (suggesting that the scheduling order instituted a "new proceeding seeking a judicial order to compel production…."); *id*. at p. 18 ("The remand order effectively instructed the PCRA court to institute a proceeding"). This argument has no serious basis.

A judicial "proceeding" is instituted or commenced whenever "the first step that invokes the judicial process" is taken. *Local Union No. 38 v. Pelella*, 350 F.3d 73 (2d Cir. 2003), *citing*, *inter alia*, *McNeil v. United States,* 508 U.S. 106, 112 (1993), *and United States v. $8,221,877.16 in United States Currency,* 330 F.3d 141, 159 (3d Cir. 2003). Here, it is plain that the Common

---

[1] When faced with a motion to remand, it is the removing party's burden to establish compliance with the governing removal statute, and hence the existence of federal jurisdiction over the controversy. *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 397 (5th Cir. 1998); *Steel Valley Author. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

Pleas Court's scheduling order was not the first such step. At a minimum, the Pennsylvania Supreme Court's order was a prior step invoking the judicial process to compel the production of evidence, since it expressly required the FCDO to "demonstrate that its actions here were all privately financed, and convincingly attest that this will remain the case going forward…." Dkt. No. 14-1 (Motion to Remand), Ex. 6, p. 1.[2]

Thus, the FCDO's various characterizations of its position on this issue—again, it contends that the scheduling order provided the "first" notice of the proceeding it removed, commenced a "new" proceeding, and "institute[d]" the proceeding, Dkt. No. 25, pp. 16-18—are completely untenable. A scheduling order is no more required for the commencement of a proceeding to compel the production of evidence than it would be for the commencement of any other form of action. It is, rather, an intermediate step in the course of such a proceeding.

---

[2] As the Commonwealth explained in its motion to remand, Dkt. No. 14, pp. 6-8, its earlier disqualification motion also provided notice of the "proceeding in which a judicial order for testimony or documents is sought or issued or sought to be enforced." 42 U.S.C. § 1446(g). However, the point is even clearer with respect to the state supreme court's order, since that order expressly required a hearing at which the FCDO must present evidence as to the nature of its funding for the *Mitchell* state-court litigation.

To the extent the FCDO faults the Commonwealth for also discussing Section 1446(b) in the course of that argument, Dkt No. 25 (FCDO Response), pp. 16-17, the FCDO misunderstands how the statute operates. Section 1446(g) does not establish a separate deadline for removal, but rather explains how Section 1446(b)'s deadline should be interpreted in proceedings involving issues of subpoena-enforcement or the like. *See* 28 U.S.C. § 1446(g) ("Where the civil action or criminal prosecution that is removable under section 1442(a) is a proceeding in which a judicial order for testimony or documents is sought or issued or sought to be enforced, *the 30-day requirement of subsection (b) of this section* … is satisfied if the person or entity desiring to remove the proceeding files the notice of removal not later than 30 days after receiving, through service, notice of any such proceeding") (emphasis added)**.** Consequently, it does not make sense to assert, as the FCDO does, Dkt. No. 25, p. 17, that "timeliness of the Removed Proceeding is governed by section 1446(g) – not section 1446(b)(1)." Section 1446(g) does not operate independently, but rather informs the interpretation of Section 1446(b) in a particular class of proceedings.

Indeed, the FCDO has implicitly recognized as much in a separately-removed action. In the case of *Commonwealth v. Johnson*, 64 A.3d 622 (Pa. 2013) (*per curiam*), where the Pennsylvania Supreme Court similarly remanded a state post-conviction matter to the Common Pleas Court for a determination of whether the FCDO should be disqualified from appearing in state court, the FCDO did not wait for the Common Pleas Court to issue an order scheduling a hearing, but instead removed the matter within 30 days of the state supreme court's order. *In re Commonwealth v. Johnson Proceeding*, 2:13-cv-02242-BMS, Dkt. No. 1-1. Were it true that an order from the Pennsylvania Supreme Court remanding for a disqualification hearing merely "instruct[s] the PCRA court to institute a proceeding," Dkt. No. 25, p. 18, and the Common Pleas Court's order scheduling the hearing therefore provides the "first notice … of a proceeding that actually require[s] the FCDO to produce testimony and/or documents," *id.* at p. 16, the FCDO's notice of removal in the *Johnson* matter would have been premature. But, as the FCDO effectively acknowledged by filing its notice of removal before any scheduling order was issued in the *Johnson* case, such assertions are not correct.

**B.     The FCDO was not entitled to wait more than 30 days after first receiving notice of the proceeding it wished to remove.**

The FCDO's alternative argument as to its timeliness burden—it contends that, "[e]ven if the Supreme Court's remand order constituted notice of a proceeding within the meaning of section 1446(g), so, too, did Judge Lerner's Scheduling Order," and "the FCDO was not required to remove at the first notice of a potential hearing that would require the FCDO to produce documents and testimony," Dkt. No. 25, p. 18—fares no better. The FCDO's position contradicts the plain language of the statute, and is equally incompatible with the law's history and purpose.

3

As for the text, which the FCDO largely ignores, aside from a *pro forma* block quote, Section 1446(g) allows removal "*not later than* 30 days after receiving, through service, notice of any" proceeding within the meaning of the subsection. 28 U.S.C. § 1446(g) (emphasis added). Thus, "if the Supreme Court's remand order constituted notice of a proceeding within the meaning of section 1446(g)," Dkt No. 25, p. 18, and the FCDO filed its notice of removal "later than 30 days" after receiving that notice, 28 U.S.C. § 1446(g), as is undisputedly the case, removal was untimely under the plain language of the statute.

The legislative history of the statute confirms, rather than refutes, this. The FCDO quotes only a single word from a committee report regarding the provision that is now Section 1446(g): "retrigger[ed]." Dkt. No. 25, p. 17. This is a telling sign that the context provided by the surrounding words is not helpful to the FCDO's position. And, indeed, it is not. As explained in the Commonwealth's motion to remand, Dkt. No. 14, pp. 8-9, the legislative history states that, because the Department of Justice routinely ignores the many, "typically frivolous" "requests … seek[ing] testimony or documents" it receives, Congress added Section 1446(g) to the statute to "retrigger" Section 1446(b)'s filing deadline when a "motion to enforce such a request," which "DoJ cannot ignore," is filed:

> [This section] preserves the institutional practice of how the Department of Justice (DoJ) responds to subpoenas. 28 USC Sec. 1446 prescribes the procedures for Federal removal. Under the statute, the defendant in a civil action must request removal within 30 days following receipt of the complaint. In a criminal case, the request must come within 30 days of arraignment or at any time before trial, whichever is earlier. DoJ helped the Committee to draft [this section] because it wants to maintain *the ability to 'retrigger' the 30-day period for removal cases that involve enforcement of subpoena requests. The great majority of requests only seek testimony or documents; these are typically frivolous, and are ignored. But DoJ cannot ignore a motion to enforce such a request*. [This section] therefore maintains the current and longstanding DoJ practice of resetting the 30-day removal clock for cases that involve the enforcement of a subpoena.

4

H.R. Rep. 112-107, pt. 1, at 6-7 (2011-2012) (emphasis added).

The FCDO's argument thus depends on analogizing the Pennsylvania Supreme Court's order to a subpoena request that could be ignored by the FCDO until the Commonwealth sought to "enforce" the court's "request" for documents or testimony. But no part of that is correct—the state supreme court's order was not a mere "request," the FCDO had no right to "ignore" it, and the Commonwealth had no burden to "enforce" it. If the Pennsylvania Supreme Court's order is akin to anything in that process, the proper analogy is not to a subpoena request but to an order directing compliance with a subpoena (which order obviously can be issued before the date on which testimony or production will take place has been set).

Moreover, unlike the situation described in the legislative history, where there was a clear, practical need to have motions to enforce subpoena requests reset the removal period, there is no reason a mere scheduling order effectuating an order for a hearing should do so. The FCDO uses labels like "potential" to describe the hearing ordered by the Pennsylvania Supreme Court, and notes that it hoped the Common Pleas Court would wait to see if the appointment request it filed (more than 30 days after the state supreme court's order) would render the issue moot. Dkt. No. 25, pp. 17-18. But it is never a complete certainty beforehand that documents or testimony will need to be produced. "[A] proceeding in which a judicial order for testimony or documents is sought," 28 U.S.C. § 1446(g), might well end with the subpoena request being denied, or the underlying action might settle before the federal officer is called as a witness or the discovery process is completed. Nevertheless, there is no indication that, when a federal officer has notice of a state proceeding at which a party is seeking a judicial order to compel him to produce evidence, he may wait more than 30 days after receiving that notice to see if the subpoena will be

5

quashed or the need to present testimony or documents otherwise will be avoided. Rather, the text, legislative history, and purpose of the provision are all to the contrary. *See* 28 U.S.C. § 1446(g) (allowing removal "*not later than* 30 days after receiving, through service, notice of any such proceeding") (emphasis added); H.R. Rep. 112-107, pt. 1, at 6 ("DoJ cannot ignore a motion to enforce such a request [for testimony or documents]"). The FCDO's notice of removal was manifestly untimely, and remand to state court is therefore mandatory.

## II. Independent of the timeliness issue, the FCDO fails to carry its burden to establish that it meets the requirements for federal officer removal.

### A. The FCDO concedes the factual premise of the Commonwealth's motion, and makes a legal argument that directly contradicts longstanding Supreme Court precedent.

With respect to the merits of the question of whether the FCDO qualifies for federal officer removal, the FCDO admits "that the conduct challenged by the Commonwealth lay outside the scope of the FCDO's federal contractual duties….," and that it therefore has no plausible argument "that in representing Mr. Mitchell in state court, his FCDO lawyers were discharging their federal contractual duties…." Dkt. No. 25, p. 20. The FCDO attempts to portray its concession as insignificant because it supposedly "is simply not a condition for removal that the action against or directed to the federal officer or contractor alleges misconduct in the performance of his official duties." *Id*. But long-settled Supreme Court precedent contradicts the FCDO's position.

In *Maryland v. Soper*, 270 U.S. 9 (1927), the Court held that, to justify removal, "[i]t must appear that the prosecution of [the federal officer] for whatever offense has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and *he must by direct averment exclude the possibility that it was based on acts or conduct of his, not justified*

6

*by his federal duty*." 270 U.S. at 33 (emphasis added). Thus, although federal officer removal "does not require that the prosecution must be for the very acts which the officer admits to have been done by him under federal authority," *i.e.*, the federal officer is entitled to deny having done the acts alleged and yet still seek removal, it *does* require that "his presence at the place *in performance of his official duty* constitute the basis, though mistaken or false, of the state prosecution." *Id*. (emphasis added). In other words, it is not enough for purported federal officers to aver that the conduct "on account of which they are … [facing a state civil action or criminal prosecution] was at a time when they were engaged in performing their official duties," since such averments "do not negative the possibility that they were doing *other acts than official acts at the time and on this occasion*, or make it clear and specific that whatever was done by them leading to the [state proceeding] was done under color of their federal official duty." *Id*. at 35 (emphasis added). *See also Mesa v. California*, 489 U.S. 121, 135 (1989) (explaining that the phrase "in the performance of his duties," which the FCDO denies is a condition for removal, has the same meaning as "under color of office," which is an explicit element of Section 1442(a)(1)).

Here, since the FCDO effectively admits that its "presence at the place," *Soper*, 270 U.S. at 33, meaning its presence in state court for Mitchell's post-conviction proceedings, was not in performance of any official federal duties, it also effectively admits that the motion to disqualify it as counsel in those state-court proceedings was based on "other acts than official acts." *Id*. at 35. *See* Dkt. No. 25, p. 20 (disclaiming any argument "that in representing Mr. Mitchell in state court, his FCDO lawyers were discharging their federal contractual duties….," and admitting "that the conduct challenged by the Commonwealth lay outside the scope of the FCDO's contractual duties").

7

## B. The FCDO's position depends on mischaracterizing the Commonwealth's argument.

Although the FCDO is candid in acknowledging the truth of the main factual premise of the Commonwealth's argument on the merits (that the conduct at issue in this litigation is outside the FCDO's federal duties), it otherwise mischaracterizes the Commonwealth's argument. The FCDO repeatedly contends without qualification that the Commonwealth's position is that it is categorically illegal for the FCDO to appear in state court because it is a federal grantee. *See, e.g.,* Dkt No. 25 (FCDO's Response), p. 1 (asserting that the Commonwealth's basis for seeking the FCDO's disqualification is that the FCDO "is funded by the Administrative Office of the United States Courts, and for that reason [is] therefore barred from appearing in state court"); *id*. at 18 (similar); *id*. at 19 (similar); *id*. at 20 (similar); 22 (similar). But, as the FCDO acknowledged in a filing just three days before it submitted its response to the remand motion, it is *not* the Commonwealth's position that FCDO lawyers are barred from appearing state court with non-federal money.

As the Commonwealth stated in its motion to remand, and "[a]s the Pennsylvania Supreme Court's order for a hearing makes clear, if the FCDO's claim to be using private funds for its purely state-court activities is substantiated, *i.e.*, if the FCDO is complying with federal law, it will be allowed to continue to appear in state court." Dkt. No. 14 (Commonwealth's Motion to Remand), pp. 17-18. The FCDO well understands the difference between this position and the one in misdescribes in its response to the motion to remand, as it recently filed a reply brief in support of its motion to dismiss in which it began by emphasizing that the Commonwealth had not disputed its ability to appear in state court with non-federal money:

> Despite their sharply differing positions on the merits of this dispute, there is actually considerable common ground between the parties as to the facts and law…. The Commonwealth either explicitly concedes or does not contest [that]….:
>
> ***
>
> The FCDO is … free to raise private funds and/or have its attorneys work pro bono so that FCDO attorneys can appear in state court proceedings….[fn]
>
> [Footnote: …. [Although the Commonwealth observes that the FCDO's website denies that it can provide legal representation without an appointment order,] the Commonwealth has already correctly conceded that "[o]f course there is nothing preventing FCDO lawyers from appearing in state court with non-federal funding." *Mitchell v. Wetzel*, No. 11-cv-02063, Dkt. No. 20 at 1 n.1. Moreover, the Commonwealth's argument elsewhere appears to accept that the FCDO is permitted to continue its representation of Mr. Mitchell if it is funding that representation privately. *See, e.g.*, Opp. 7, 18.

Dkt. No. 23, p. 1 & n. 1.

Perhaps not coincidentally, the FCDO's new (and inaccurate) characterization of the Commonwealth's position comes in a filing in which it wishes to argue that *Jefferson County v. Acker*, 527 U.S. 423 (1999), is "analytically identical" to this case (Dkt. No. 25, p. 20)—an assertion that depends entirely on the above mischracterization. *Jefferson County* involved state actions by a county to collect occupational taxes from federal judges who worked in the county. The judges removed the actions to federal court under Section 1442(a)(3), asserting a defense under the intergovernmental tax immunity doctrine because the occupational tax fell on their performance of federal judicial duties, and therefore allegedly risked interfering with the operation of the federal judiciary. *Jefferson County*, 527 U.S. at 427.

Although not the main focus of the Supreme Court's opinion, the Court noted as a "preliminar[y]" matter that the state proceedings were "for an act under color of office," 28 U.S.C. § 1442(a)(3), because "[t]he essence of the judges' colorable defense is that Jefferson

County's Ordinance expressly declares it 'unlawful' for them to 'engage in [their] occupation' without paying the tax, and thus subjects them to an impermissible licensing scheme. The judges accordingly see Jefferson County's enforcement actions as suits 'for' their having 'engage[d] in [their] occupation.'" *Id*. at 427, 432 (citation to local tax ordinance omitted; all other alterations supplied by the Court"). The Court deemed it sufficient that the judge's allegations on that point were plausible, albeit not "airtight," because, under a more demanding burden, the "color of office" requirement would effectively require the removing officer to prove that his federal defense is correct, as opposed to merely colorable. *Id*. Since the conduct giving rise to the state tax-collection proceedings "encompass[ed] holding court in the county and receiving income for that activity," the Supreme Court was "satisfied that the judges have shown the essential nexus between their activity 'under color of office' and the county's demand, in the collection suits, for payment of the local tax." *Id*. at 433.

The situation here is not comparable, much less "analytically identical." At the outset, since Section 1442(a)(3) contains no acting-under-a-federal-officer provision, and the federal judges were obviously federal officers rather than mere federal grantees in any event, *Jefferson County* can provide no guidance as to whether the FCDO is "acting under" a federal officer when it appears in state court to litigate state post-conviction proceedings. Moreover, the judges in *Jefferson County* were asserting an affirmative defense under federal law, and thereby attempting to protect a federal interest, whereas the FCDO is merely denying a violation of federal law, and thereby *denying* the existence of any relevant federal interest.

But even putting aside those significant differences, the FCDO's attempt to analogize this case to *Jefferson County* is at odds with its "burden … to submit a 'candid[,] specific and

10

positive' statement of the facts so that the court will be able to determine the validity of [its] claim for [federal officer] removal." *Colorado v. Symes*, 286 U.S. 510, 520 (1932). Again, the FCDO mischaracterizes the Commonwealth's position as being that it is categorically illegal for the FCDO to appear in state court because the FCDO receives federal grant money for its federal habeas work. And it is only because of that mischaracterization that the FCDO can assert, in its comparison of this matter to *Jefferson County*, that "[i]t is equally true here that to credit for purposes of the motion to remand the Commonwealth's argument that the CJA prohibits community defender organizations and federal defenders from appearing in state court would be 'to decide the merits of the case.' It is the FCDO's position that … [under the CJA] lawyers, including those employed by the FCDO, do not need federal authorization to represent in PCRA proceedings indigent defendants who retain their services." Dkt. No. 25, p. 22.[3] Given the Commonwealth's actual position, which makes clear that "[o]f course there is nothing preventing FCDO lawyers from appearing in state court with non-federal funding," *Mitchell v. Wetzel*, No. 11-cv-02063, Dkt. No. 20 at 1 n.1, it is no "defense" at all—much less a colorable defense bound up in conduct of a federal officer acting "under color of [federal] office"—to merely *agree* with the Commonwealth that the FCDO is not prohibited from representing private clients in state court with non-federal money.[4]

---

[3] In a related habeas proceeding, the FCDO has nevertheless raised the question of whether such "federal authorization" should be granted via a federal appointment order to exhaust state claims. As explained in that context, such an order would be flatly improper under *Harbison v. Bell*, 556 U.S. 180 (2009).

[4] The FCDO correctly does not mention its actual "federal defenses" in this context, since they have no connection to the "under color of [federal] office" requirement. Unlike the defense at issue in *Jefferson County*, the two defenses the FCDO raised in its motion to dismiss—there, it (continued. . .

11

The situation here is thus a far cry from that in *Jefferson County*. The FCDO notes that, in that case, the four dissenting Justices "argued that non-payment of the tax was not required by the respondents' position as federal judges," Dkt. No. 25, p. 20, but the five Justices in the majority found there was at least a plausible argument to the contrary. However, contrary to the FCDO's suggestion, that sort of debate is not even presented in this case, since there is no disagreement when "the Commonwealth argues here that the appearance in state court of the FCDO's lawyers is not part of their federal duties." *Id*. at p. 20. Again, that is not merely an "argument" by the Commonwealth, to be resolved if and when the Court reaches the stage at which it is considering the merits of the underlying dispute. It is a position the FCDO itself (correctly) takes on the very same page on which it offers its misconceived comparison to *Jefferson County*. *See id.* at p. 20 (admitting "that the conduct challenged by the Commonwealth lay outside the scope of the FCDO's federal contractual duties….," and thus that the FCDO has

---

invoked the private right of action and preemption doctrines—do not depend on federal-officer status; any defendant or respondent in any action could raise those defenses. The third issue the FCDO raised in its motion to dismiss, the primary-jurisdiction rule, merely concerns which entity should first address the Commonwealth's claim. It does not provide a "defense" to that claim, and, in any event, can be invoked by any litigant, regardless of federal-officer status, so long as the litigant believes his case requires interpretation of complex administrative regulations.

As for the defenses the FCDO mentioned in its notice of removal but considered too weak or too fact-bound for the motion to dismiss, the First Amendment claim is not tied to the FCDO's alleged federal-officer status, and the equal-protection argument depends on the same mischaracterization of the Commonwealth's argument discussed in the text. Again, the Commonwealth does not dispute that the FCDO has the right to appear in state court with non-federal money, and the FCDO does not argue that it has a right, under the Equal Protection Clause or otherwise, to use federal funds for purely state-court activities in state proceedings to which it has not been appointed. Moreover, any (hypothetical) argument for such a right would be far from "colorable."

no plausible argument "that in representing Mr. Mitchell in state court, his FCDO lawyers were discharging their federal contractual duties….").

> C. **The FCDO fails to distinguish this case from other situations in which the Supreme Court has held that public defenders are not federal officers and do not act "under color of … law."**

In the Commonwealth's remand motion, it also observed that, "in analogous contexts," albeit not yet in the context of whether public defenders may qualify for federal officer removal," Dkt. No. 14, p. 14, the Supreme Court has already held that public defenders do not act "under color of … law," *Polk County v. Dodson,* 454 U.S. 312, 317-18 (1981), and are not "federal officers" for purposes of the immunity defenses, such as absolute immunity and federal-officer immunity, to which such officers are entitled. *Ferri v. Ackerman*, 444 U.S. 193, 199-200, 205 (1979). The FCDO's response is limited to assertions that "the Commonwealth's cited cases are inapposite because they do not involve section 1442 removal," and "[a] federal defender may not be a federal official for purposes of sovereign immunity, but is for section 1442 removal purposes." Dkt. No. 25, p. 22.

But, of course, the fact that the Supreme Court's decisions thus far holding that the public defenders do not act "under color of … law" and are not "federal officers" have come in contexts other than federal-officer removal does not itself mean that those cases are "inapposite." It merely means that their relevance is by analogy. And the FCDO offers no reason to believe the analogy is inapt. It would be quite odd to conclude that public defenders do not sufficiently advance the government's interests, nor do suits against them not pose a sufficient threat to the government's function, to justify treating them as federal officers for purposes of immunity defenses, but that they nevertheless should be treated as federal officers for purposes of removal.

After all, the core purpose of both federal-officer doctrines concerns preventing improper disruptions to the functions of the federal government, and removal is in many contexts a *broader* form of protection for federal government, since immunity defenses generally can only be asserted in suits for damages based on torts, not in criminal prosecutions or suits for equitable relief.

### III. The FCDO's response to the Commonwealth's abstention argument is unavailing.

Finally, with respect to abstention under *Younger v. Harris,* 401 U.S. 37 (1971), the Commonwealth was correct in its prediction that the FCDO would neither dispute that the three requirements for such abstention are met here nor attempt to invoke any recognized exception. Rather, as expected, the FCDO has confined itself to the argument that abstention doctrines should be inapplicable in federal officer removal cases because the Court's jurisdiction in such cases is "mandatory." But, as explained in the Commonwealth's motion, Dkt. No. 14, pp. 21-22, the Court still must consider the comity principles at the heart of *Younger*, and abstain from exercising jurisdiction if the requirements of *Younger* apply. *See, e.g., Jefferson County*, 527 U.S. at 435 n. 5 (noting, in case removed pursuant to Section 1442, that "abstention and stay doctrines may counsel federal courts to withhold jurisdiction" in some situations); *Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1501-02 (8th Cir. 1992) (concluding, in case removed pursuant to Section 1441, that "the district court had the authority to remand this case to state court based on abstention, a reason not expressly articulated in § 1447(c)"); Franklin D. Cleckley, *Clearly Erroneous: The Fourth Circuit's Decision to Uphold Removal of a State-Bar Disciplinary Proceeding Under the Federal-Officer Removal Statute*, 92 W. Va. L. Rev. 577, 615-21 (Spring 1990) (persuasively arguing that, even in context of case removed pursuant to

Section 1442, federal courts should abstain from exercising jurisdiction over state attorney-disciplinary matters). The FCDO has not carried its burden to establish that its notice of removal was timely or that it qualifies for federal-officer removal; but even if removal otherwise would be proper, abstention would be warranted.

## CONCLUSION

This matter should be remanded to the Court of Common Pleas of Philadelphia County.

/s/ *Peter Carr*
Peter Carr
Assistant District Attorney
Hugh J. Burns, Jr.
Chief, Appeals Unit
PHILADELPHIA DISTRICT ATTORNEY'S OFFICE
Three South Penn Square
Philadelphia, PA 19107
peter.carr@phila.gov
hugh.burns@phila.gov
(215) 686-5766

Date: June 3, 2013         *Attorneys for the Commonwealth*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE PROCEEDING IN WHICH THE | : | CIVIL ACTION |
| COMMONWEALTH OF PENNSYLVANIA | : | |
| SEEKS TO COMPEL THE DEFENDER | : | |
| ASSOCIATION OF PHILADELPHIA TO | : | |
| PRODUCE TESTIMONY AND DOCUMENTS | : | |
| AND TO BAR IT FROM CONTINUING TO | : | |
| REPRESENT DEFENDANT MITCHELL IN | : | |
| STATE COURT | : | No. 13-cv-1871 |

## CERTIFICATE OF SERVICE

The Commonwealth's motion to remand and supporting brief have been filed electronically, and are available for viewing and downloading by all counsel of record from the Electronic Case Filing System. In addition, I have caused a copy of the same documents to be served by first-class mail on the following person:

David Richman, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2799
*Attorney for the Defender Association of Philadelphia*


/s/ *Peter Carr*
Peter Carr
Assistant District Attorney
PHILADELPHIA DISTRICT ATTORNEY'S OFFICE
Three South Penn Square
Philadelphia, PA 19107
peter.carr@phila.gov
June 3, 2013                     (215) 686-5766