```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE PROCEEDING IN WHICH THE  :
COMMONWEALTH OF PENNSYLVANIA    :
SEEKS TO COMPEL THE DEFENDER    :
ASSOCIATION OF PHILADELPHIA     :
TO PRODUCE TESTIMONY AND        :
DOCUMENTS AND TO BAR IT FROM    :
CONTINUING TO REPRESENT         :
DEFENDANT MITCHELL IN STATE     :
COURT                           :     NO. 13-cv-1871
```

MEMORANDUM

McLaughlin, J.                                    August 15, 2013


Isaac Mitchell, a Pennsylvania state prisoner under sentence of death, is represented in his state and federal habeas corpus proceedings by attorneys with the Federal Community Defender Organization, Eastern District of Pennsylvania ("FCDO").  The Commonwealth has filed a motion in the Pennsylvania Supreme Court to remove the FCDO as counsel in Mitchell's state proceeding for allegedly violating its funding obligations under federal law.  As a result, the Pennsylvania Supreme Court directed the Court of Common Pleas to hold a hearing to determine whether the FCDO used federal grant monies in its state court representation of Mitchell, and, if it made such a finding, to disqualify the FCDO from the case.  The FCDO has now removed the hearing to federal court under 28 U.S.C. § 1442, the federal officer removal statute.

This memorandum resolves two motions, filed in federal court, related to the hearing and its directives as set forth by the Pennsylvania Supreme Court.[1]  First, the Commonwealth has moved to remand the proceeding to state court.  Second, the FCDO has moved to dismiss the proceeding for failing to state a claim for relief.

The Court denies the Commonwealth's motion to remand.  The FCDO's removal was proper under 28 U.S.C. § 1442(a) and § 1446(g), in that the hearing was directed to a person acting under a federal agency, pled a colorable defense that the proceeding was related to an act taken under color of federal office, and was timely removed.

The Court grants the FCDO's motion to dismiss under Fed. R. Civ. P. 12(b)(6).  The essence of the Commonwealth's claim is that the FCDO should be disqualified from representing Mitchell in his state post-conviction proceeding because it is using federal monies in that representation, in violation of the

_____

[1] A third related motion was also filed in the underlying habeas corpus proceeding, Mitchell v. Wetzel, 11-2063, in which Mitchell sought an order from the Court authorizing the FCDO to exhaust Mitchell's state court remedies in the scope of its federally funded duties ("Authorization Motion").  Docket No. 7. In a separate memorandum and order with today's date, the Court denied the FCDO's Authorization Motion.

Criminal Justice Act ("CJA") and 18 U.S.C. § 3599 ("§ 3599"). The FCDO argues that there is no private right of action under the federal statutes the Commonwealth seeks to enforce. The Commonwealth concedes that point but argues that the private right of action doctrine does not apply to an action brought in the public interest by a governmental entity. Third Circuit and Supreme Court precedent applying the private right of action doctrine in such circumstances causes the Court to reject the Commonwealth's theory.

The Commonwealth next argues that even if it cannot enforce federal law directly, it can incorporate that federal law into its state code of professional conduct and then disqualify the FCDO for violating those rules of professional conduct. Again, Supreme Court precedent rejects such a formalistic approach to determining whether a proceeding falls under the private right of action doctrine. It instructs courts to look to the substance of the cause of action at issue. The substance of the Commonwealth's motion to disqualify is that the FCDO's use of federal money in state court violates federal law. As the Commonwealth's counsel said at oral argument, its allegations are all "coming from" the unauthorized use of federal money.

3

Even if the Commonwealth's motion were not otherwise barred, it would fail on preemption grounds.  Any state rule of professional conduct that attempted to enforce the CJA and § 3599 would be an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in passing those statutes.

I.   <u>Factual and Procedural Summary</u>

In 1999, Isaac Mitchell was convicted of two counts of first-degree murder and sentenced to death by a jury sitting in the Court of Common Pleas of Philadelphia County.  His sentence was affirmed by the Pennsylvania Supreme Court on direct appeal in December 2003.  <u>Commonwealth v. Mitchell</u>, 839 A.2d 202, 283 (Pa. 2003).

Mitchell petitioned for post-conviction relief under the state Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541, et seq., in June 2004.  Mitchell's first court-appointed counsel filed amended and supplemental pleadings, and after a limited evidentiary hearing, his petition was rejected in July 2010.  A second counsel was appointed by the court for purposes of Mitchell's PCRA appeal, but that counsel did not file a timely notice of appeal and allowed Mitchell's filing

deadline to expire.  The second counsel later moved to withdraw from Mitchell's case.  Notice of Removal, ¶ 11-12 (Docket No. 1).

On September 20, 2010, counsel from the Federal Community Defender Organization, Eastern District of Pennsylvania entered its appearance on behalf of Mitchell in the Court of Common Pleas.[2]  The Commonwealth did not object.  FCDO counsel also successfully moved to restore Mitchell's PCRA appellate rights. Id. ¶ 13.

On March 25, 2011, the FCDO filed a federal habeas petition on Mitchell's behalf in the instant court.  On April 1, 2011, Mitchell moved the Court to appoint the FCDO as his federal counsel under 18 U.S.C. § 3599(a)(2).  He also moved to hold the federal proceedings in suspense.[3]  The Commonwealth did

---

[2] The FCDO entered its appearance in Mitchell's state court proceeding at Mitchell's request.  As members of good standing of the Pennsylvania bar, FCDO counsel meet the qualifications set forth under state law to provide Mitchell's representation. Mot. to Dismiss at 1, 6 (Docket No. 4); Mot. for Remand at 1 (Docket No. 14).

[3] In light of his second counsel's failure to file a timely notice of appeal, Mitchell filed, and then moved to stay, his federal proceeding to preserve his right to federal habeas relief in the event that the Pennsylvania Supreme Court ultimately denied his right to an appeal.  See 28 U.S.C. § 2244(d)(2) (one-year statute of limitations for federal habeas petitions begins to run when direct appeal becomes final); see

not object to these motions, and the Court appointed the FCDO as federal counsel and placed the federal case in suspense pending exhaustion of state remedies.  Id. ¶ 14-16; see also 4/15/11 Orders, Mitchell v. Wetzel, 11-2063 (Docket Nos. 5-6).

Over the next year, the FCDO took several steps to prepare Mitchell's PCRA appeal brief, including issuing discovery requests, investigating prior and collateral claims, and filing a preliminary statement of matters on appeal.  On September 13, 2012, the FCDO filed Mitchell's PCRA appeal brief with the Pennsylvania Supreme Court.  Id. ¶ 17; see also Initial Brief, Commonwealth v. Mitchell, No. 617 Cap. App. Dkt.

On September 25, 2012, the Pennsylvania Supreme Court sua sponte directed the FCDO to "produce a copy of any federal or state appointment order it may have secured in this matter, authorizing it to pursue a [PCRA] petition in Pennsylvania state courts."  Order 9/25/12, Opp. to Mot. to Dismiss, exh. 1 (Docket No. 15-1).  The FCDO responded to this request on October 5, 2012.  It stated that it had secured an order appointing it as counsel for Mitchell's federal proceeding, but that the order did not mention Mitchell's state proceeding.  The FCDO further

---

also Mot. to Stay, ¶ 4-5, Mitchell v. Wetzel, 11-2063 (Docket No. 4).

stated that it was able to represent Mitchell in state court without a federal order in its capacity as a "nonprofit organization providing defender services."  Response 10/5/12, Mot. to Remand, exh. 2 (Docket No. 14-4).

On October 16, 2012, the Commonwealth filed a motion to remove the FCDO as counsel in the state court proceeding ("Motion for Removal").  Referring to a set of cases analyzing the scope of federally appointed counsel under 18 U.S.C. § 3599, the Commonwealth contended that "the presence of federally-funded FCDO lawyers in [Mitchell's] case is unlawful."  It argued that the Pennsylvania Supreme Court had jurisdiction to remove the FCDO as counsel by way of its power to govern the practice of law as well as the general doctrine of concurrent jurisdiction.  Mot. for Removal, id., at exh. 4, at 2-6.  The FCDO submitted a brief opposing the Commonwealth's motion.  Id., at exh. 5.

The Pennsylvania Supreme Court issued a per curiam decision on this motion on January 10, 2013 ("Supreme Court Order").  The Supreme Court Order remanded the motion to the Court of Common Pleas of Philadelphia County, the lower court that had previously presided over Mitchell's PCRA petition ("PCRA court").  Noting that it was "not clear" under federal

law whether the FCDO had authority to participate in the state proceeding, the Pennsylvania Supreme Court directed the PCRA court to hold a hearing to determine whether to remove the FCDO as counsel.  Specifically, it ordered the PCRA court to "determine whether the FCDO used any federal grant monies to support its activities in state court in this case."  If the PCRA court determined that the FCDO's actions were privately financed, then the PCRA court was to allow the FCDO to remain on the case.  If, however, the FCDO failed to demonstrate that its actions were privately financed, the Pennsylvania Supreme Court directed the PCRA court to remove it as Mitchell's counsel.[4]  Supreme Court Order, Notice of Removal, exh. A.

On March 14, 2013, Mitchell filed a motion with the instant Court, requesting that the Court reactivate the federal habeas case and enter an order authorizing the FCDO to exhaust

---

[4] Two justices dissented from the order, stating that the Court's per curiam order decided "novel questions without discussion of the parties' arguments, without citation to legal authority, without benefit of any lower court analysis, and indeed, without acknowledgment that there are open legal questions."  The dissent noted that the issue presented required "the construction of federal statutes and other authority, consideration of the relationship between federal and state court systems in capital litigation, and consideration of counsel's role therein."  Dissenting Statement to Supreme Court Order, Notice of Removal, exh. A.

his claims in state court in the scope of its federally funded duties.  Authorization Mot., Mitchell v. Wetzel, 11-2063 (Docket No. 7).  At that point, the PCRA court had not yet acted on the Pennsylvania Supreme Court's order of January 10.

On March 19, in light of the federally-filed motion, the PCRA court requested that the parties submit papers on whether it should "refrain from proceeding with the remand hearing ordered by the Pennsylvania Supreme Court until such time as the United States District Court has acted on petitioner's Motion."  Notice of Removal, exh. C.  On April 3, 2013, after receiving the parties' correspondences, and after hearing from counsel in open court, the PCRA court issued an order setting a hearing date of June 12, 2013 on the remanded issue ("PCRA hearing").  Id., exh. E; see also id. at ¶ 7; Tr. Hr'g 6/27/13 49:24-50:18.

Two days later, on April 5, 2013, the FCDO filed a Notice of Removal as to the PCRA hearing, which the instant Court received as related to Mitchell's suspended federal habeas case.[5]  On April 12, 2013, the FCDO moved to dismiss the proceeding under Fed. R. Civ. P. 12(b)(6), or, in the alternative, to stay

_____

[5] The underlying state action, in which Mitchell is appealing the denial of his PCRA petition, has not been removed and remains in the Court of Common Pleas of Philadelphia County.

9

the proceeding and refer the issue to the administrative agency
for its views.  On May 6, 2013, the Commonwealth moved to remand
the proceeding to state court.  The Court heard oral argument on
these motions on June 27, 2013.

II. <u>Overview of Associated FCDO Litigation</u>

        This proceeding is part of a broader effort by the
Commonwealth to disqualify FCDO counsel from representing
petitioners in state post-conviction proceedings.  In addition
to the proceeding in front of this Court, at least six
Pennsylvania capital cases are currently involved in litigating
the issue of FCDO representation.  In all six cases, the
Commonwealth maintained the position that FCDO attorneys should
be disqualified from state court because they unlawfully used
federal funding in their representation of clients in state
court activities.

        A logical starting point for this narrative is the
Pennsylvania Supreme Court concurring opinion in <u>Commonwealth v.</u>
<u>Spotz</u>, which was issued in April 2011.  <u>Commonwealth v. Spotz</u>,
18 A.3d 244 (Pa. 2011).  Spotz was represented by FCDO counsel
in his post-conviction proceedings.  In the course of denying
Spotz's appeal, the concurrence criticized the FCDO's litigation

practices in those proceedings as "abusive" and obstructionist.[6]
Id. at 330.  Observing that "the commitment of federal manpower
alone is beyond remarkable, something one would expect in major
litigation involving large law firms," it characterized the
FCDO's litigation as an effort to "obstruct capital punishment
in Pennsylvania at all costs."  Id. at 331-32.

   In November 2011, the Commonwealth petitioned the
Pennsylvania Supreme Court to exercise its "extraordinary
jurisdiction" under 42 Pa. Cons. Stat. Ann. § 726 to bar all
FCDO attorneys from appearing in state post-conviction
proceedings.  Its "King's Bench" petition alleged, for the first
time, that the FCDO had violated its funding obligations under
federal law by using federal monies in its state court
activities.  When the FCDO removed the Petition to federal
court, however, the Commonwealth voluntarily dismissed the

_____

   [6] The Spotz concurrence was authored by Chief Justice Castille
and joined by Justices McCaffery and Melvin.  It highlighted the
fact that the FCDO had devoted five lawyers, an investigator,
and multiple experts to the petitioner's case, eventually
culminating in a 100-page brief.  Id. at 332.  It sought to
bring the issue to the attention of the "federal authorities
financing and authorizing the incursions; to Pennsylvania's
Senators and House members; and to the taxpayers who ultimately
foot that bill."  Id. at 330.

Petition.  In re Appearance of Federal FCDO in State Criminal Proceedings, No. 11-7531 (E.D. Pa. Dec. 8, 2011) (Docket No. 4).

The Commonwealth instead submitted separate motions in individual capital post-conviction cases in state court, beginning with Mitchell's, seeking removal of FCDO counsel in each case.  Each motion alleged that the FCDO had violated its federal funding obligations by representing clients in state court, and each requested that the Pennsylvania Supreme Court order hearings to determine whether the FCDO used federal money in its state court representation and, if so, to remove the FCDO as counsel.  The FCDO again responded by removing those proceedings to federal court.  Currently, there are at least six similarly situated proceedings that have been removed.

III. Federal Administration of Criminal Justice Act and § 3599

This Court appointed the FCDO to represent Mitchell in his federal habeas proceedings pursuant to its authority under 18 U.S.C. § 3599(a)(2) and the Criminal Justice Act, 18 U.S.C. § 3006A(a), et seq.

Congress enacted the Criminal Justice Act shortly after the Supreme Court's holding in Gideon v. Wainwright, 372 U.S. 335 (1963), which established the right to counsel for indigent

12

criminal defendants.  The CJA set forth the federal procedure
for appointing and compensating court-appointed counsel for
defendants "who are financially unable to obtain an adequate
defense in criminal cases in the courts of the United States."
Pub. L. No. 88-455, 78 Stat. 552 (1964); see generally 18 U.S.C.
§ 3006A(a), et seq.  Included within the group of indigent
individuals for whom counsel may discretionarily be appointed
are inmates seeking federal habeas corpus relief under 28 U.S.C.
§ 2254 and 2255.  18 U.S.C. § 3006A(a)(2)(B).  Such appointment
of counsel is mandatory for indigent petitioners seeking habeas
relief from a sentence of death.[7]

---

[7] In any post-conviction proceeding under § 2254 and 2255
seeking to vacate a death sentence, "any defendant who is or
becomes financially unable to obtain adequate representation or
investigative, expert, or other reasonably necessary services
shall be entitled to the appointment of one or more attorneys
and the furnishing of such other services."  18 U.S.C. §
3599(a)(2) (emphasis added); enacted pursuant to Pub. L. No.
103-322, § 60002(a) (1994).

     Once an attorney is appointed by the district court under §
3599(a)(2), the scope of his representation is governed by §
3599(e).  "[E]ach attorney so appointed shall represent the
defendant throughout every subsequent stage of available
judicial proceedings . . . ."  18 U.S.C. § 3599(e); see also
Harbison v. Bell, 556 U.S. 180, 189-90 (2009) (interpreting the
statute's "every subsequent stage" language).  In Mitchell's
case, the FCDO is not asserting that it is authorized to appear
in state court by virtue of its federal appointment.  It
contends that its attorneys are appearing in their capacities as
members of good standing of the Pennsylvania bar.

As set forth under the CJA, the appointment of court-appointed federal counsel, including those obligated under § 3599, is administered through individual district courts under the supervision of the judicial council of each circuit.  18 U.S.C. § 3006A(a).  Each district court is required to implement a plan regarding the provision of adequate representation for its district's indigent criminal defendants.  The plan may provide either for the establishment of a federal public defender organization or the use of authorized nonprofit defense counsel services referred to as "community defender organizations" ("CDOs").  18 U.S.C. § 3006A(g)(2)(A)-(B).

The Defender Association of Philadelphia, of which the FCDO is a subunit, was named under the Eastern District of Pennsylvania's plan as a CDO.  The FCDO may therefore be appointed as counsel in this district to represent indigent petitioners seeking federal habeas relief in death penalty proceedings.  Plan of the United States District Court for the Eastern District of Pennsylvania Pursuant to the Criminal Justice Act, at 3 ("E.D. Pa. Plan").

Grantee CDOs, including the FCDO, are not compensated on a fee-for-service basis for their representation services.  Instead, under the CJA, their funding is derived through

14

"periodic sustaining grants" which are appropriated from the Federal Treasury.  18 U.S.C. § 3006A(g)(2)(B)(ii).  The administration of these periodic grants is tasked to the Director of the Administrative Office of the United States Courts ("Administrative Office").  Id. at § 3006A(i) ("Payments from such appropriations shall be made under the supervision of the Director of the Administrative Office of the United States Courts.").

The Administrative Office, under the direction of the Judicial Conference of the United States, oversees the regulation of grantee CDOs and compliance with its funding obligations.  Id.; id. at § 3006A(h); see generally 28 U.S.C. § 604, et seq.  As a federal grantee CDO, the FCDO is required to "submit to the Judicial Conference of the United States an annual report setting forth its activities and financial position and the anticipated caseload and expenses for the next fiscal year."  Id. at § 3006A(g)(2)(B); see also E.D. Pa. Plan at 24 (CDOs "shall receive such periodic sustaining grant[s] as may be approved by the Judicial Conference of the United States from year to year based on the aggregate of cases and matters to be handled by such service, and its expenses, over the period of the next ensuing year.").

15

The Judicial Conference is also authorized to "issue rules and regulations governing the operation of plans formulated under this section." Id. at § 3006A(h).  One set of regulations promulgated by the Judicial Conference under this authority is its Guidelines for Administering the CJA and Related Statutes (the "Guidelines").  See Guide to Judiciary Policy, Vol. 7, Pt. A (2011), available at http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/CJAGu idelinesForms/GuideToJudiciaryPolicyVolume7.aspx; see also Appendix 4A, Community Defender Organizations: Grants and Conditions, attached to Mot. to Dismiss, exh. 3.

The FCDO's obligations as a federal grantee are enumerated in these Guidelines.  In addition to the submission of its annual report, the Guidelines mandate that the FCDO keep detailed financial records which are auditable at any reasonable time upon request.  Appendix 4A of the Guidelines, at 4.  Its funds are required to be segregated into grant funds and private funds, and unexpended balances are required to be returned to the Administrative Office.  Id. at 2-3.

The FCDO enters into an annual grant contract with the Administrative Office, binding it to the terms and conditions set forth in the Guidelines.  The Administrative Office performs

16

an annual audit of each grantees' compliance with the terms of
the contract.  Id. at 4.  If a grantee is found to have failed
to comply substantially with the terms or conditions of the
grant, the Administrative Office may "reduce, suspend, or
terminate, or disallow payments under th[e] grant award as it
deems appropriate."  Id. at 9.


IV.  Motion to Remand

        The FCDO has removed the proceeding under 28 U.S.C. §
1442(a)(1), the federal officer removal statute, and §
1442(d)(1), the provision governing proceedings seeking
subpoenas for testimony or documents from a federal officer.
The Commonwealth has moved to remand the matter on both
substantive and procedural grounds.  The Court finds that
removal was proper and denies the Commonwealth's motion to
remand.[8]

---

        [8] At oral argument, counsel for the Commonwealth conceded that
removal was proper under 42 U.S.C. § 1442(a)(1) and (d)(1) but
maintained its timeliness argument.  Tr. Hr'g 6/27/13 36:18-
37:7; 45:2-3.  Because of the inconsistent positions of the
Commonwealth and the jurisdictional nature of the issue, the
Court will consider all of the requirements under 42 U.S.C. §
1442 and § 1446.

A.   <u>Federal Officer Removal Statute</u>

28 U.S.C. § 1442 governs removal of proceedings against federal officers or agencies.  Under § 1442(a)(1), removal to federal court is proper if the action is

> a civil action or criminal prosecution that is commenced in a State court and that is against or directed to. . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office.

28 U.S.C. § 1442(a)(1) (final clause omitted).

Section 1442(d)(1) clarifies the scope of "civil action and criminal prosecution" to include "any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued."  28 U.S.C. § 1442(d)(1), <u>enacted pursuant to</u> Removal Clarification Act of 2011, Pub. L. No. 112-51 (2011).

Under the relevant provisions of § 1442(a)(1) and (d)(1), therefore, a state proceeding is properly removed if:  1) it involves a civil action or criminal prosecution, including one in which a judicial order, such as a subpoena for testimony or documents, is sought or issued; 2) it is against or directed to a person acting under an officer or agency of the United States;

18

and 3) it is "for" or relates to actions taken "under color" of federal office.

The federal officer removal statute was enacted by Congress to "maintain the supremacy of the laws of the United States by safeguarding officers and others acting under federal authority against peril of punishment for violation of state law."  Colorado v. Symes, 286 U.S. 510, 517 (1932) (final clause omitted).  Its removal power is to be "liberally construed to give full effect to the purposes for which they were enacted."  Id.; see also Willingham v. Morgan, 395 U.S. 402, 406-07 (1969).

    1.    The PCRA Hearing Seeks Testimony or Documents
          From the FCDO.

The Court first considers whether the instant proceeding qualifies as a proceeding described in § 1442(d)(1).  The subject of the FCDO's Notice of Removal is a hearing that was originally scheduled to be held in front of the PCRA court on June 12, 2013.[9]  Because the hearing was ordered by the

---

[9] The FCDO properly removed only the PCRA hearing and not the underlying PCRA action, in which Mitchell's PCRA appeal is still pending.  See 28 U.S.C. § 1442(d)(1) ("If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.").

Pennsylvania Supreme Court, the Court looks to the Supreme Court Order directing the remand to determine the hearing's intended subject matter.

The purpose of the PCRA hearing, as it was described by the Pennsylvania Supreme Court, was to determine whether to remove the FCDO as Mitchell's counsel.  Specifically, the Pennsylvania Supreme Court directed the PCRA court to "determine whether the FCDO used any federal grant monies to support its activities in state court in this case.  If the FCDO cannot demonstrate that its actions here were all privately financed, and convincingly attest that this will remain the case going forward, it is to be removed."  Supreme Court Order, at 1.

According to this Order, the PCRA court was to determine whether the FCDO could "demonstrate" the source of funding for its state court litigation.  Although the Order did not specify the manner by which the demonstration was to be made, the FCDO would have had to produce some sort of evidence, through testimony or production of documents, regarding its funding. Indeed, in open court on April 3, 2013, the PCRA court and counsel for the FCDO discussed the types of evidence that the FCDO intended to present.  Tr. Hr'g 6/27/13 49:24-50:18.  To paraphrase the language of § 1442(d)(1), the PCRA hearing is an

20

ancillary proceeding that issues, or seeks to issue, a judicial order requiring testimony or documents from the FCDO.

2.    The FCDO is "Acting Under" a Federal Agency.

The next issue is whether, under § 1442(a)(1), the proceeding is directed to or against an "officer (or any person acting under that officer) of the United States or of any agency thereof."  28 U.S.C. § 1442(a)(1).  Here, the PCRA hearing is directed to counsel from the FCDO, a federal grantee acting under the Administrative Office of the United States Courts, a United States agency.

The Supreme Court has held that a private person "acts under" a federal officer when his actions "involve an effort to assist, or to help carry out, the duties or tasks of the federal superior."  Watson v. Philip Morris Cos., 551 U.S. 142, 152-53 (2007).  The words "acting under" are broad and should be "liberally construed," while contained by the text, context, history, and purposes.  Id. at 147 (internal citations omitted).

In Watson, the Supreme Court considered whether a private company that was closely monitored by a federal regulatory agency "acted under" a federal officer, and held that, under those circumstances, it did not.  The Court distinguished Philip

21

Morris's actions of "simple compliance" from the responsibilities of a federal agency's private contractor.  Id. at 153-54.  Because private contractors may "help the Government produce an item that it needs . . . and help[] officers fulfill other basic governmental tasks," they "act under" the federal agency in a manner that Philip Morris did not.  Id.; see also Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 400 (5th Cir. 1998) (holding that government contractor chemical company could apply the federal officer removal statute).

One of the FCDO's stated purposes as a CDO is to assist the federal government by providing representation to indigent defendants.  Notice of Removal, ¶ 30.  Under § 3599(a)(2), the federal government is required to provide counsel for all indigent death penalty defendants in federal habeas proceedings. The task of appointing counsel has been delegated to the district courts, and, instead of directly providing this service through a federal public defender organization, the Eastern District of Pennsylvania has opted to "contract" the service through the use of CDOs.  In exchange, the FCDO receives a periodic sustaining federal grant, which is administered by the Administrative Office.  See generally 18 U.S.C. § 3006A(g).

The Court finds that the FCDO's assistance in implementing the aims and purposes of the CJA is similar to that of the federal contractor discussed in Watson.  Because the federal government is obligated by law to appoint counsel to capital habeas petitioners, the FCDO provides a service that the "Government itself would [otherwise] have had to perform." Watson, 551 U.S. at 154.  Its service as court-appointed federal counsel for Mitchell and other similarly-situated individuals sufficiently evinces an effort to carry out the duties of a federal superior.  Id. at 152.

In addition, as a federal grantee, the FCDO is subject to the authority and supervision of the Administrative Office by virtue of the Office's dispensation of CJA grants.  18 U.S.C. § 3006A(g)(2)(B).  The federal regulatory scheme involves a number of terms and conditions regarding the use of federal grant funds.  For example, a grantee is required to submit an annual report setting forth the activities it has performed over the year.  If the grantee fails to comply substantially with the terms and conditions of the grant award, the Administrative Office may "reduce, suspend, terminate, or disallow payments . . . as it deems appropriate."  Appendix 4A of Guidelines, at 9.

At least two district courts, in considering a similar issue, held that civil legal service lawyers funded by the United States through grants or contracts qualified as persons "acting under" a federal officer under § 1442.  Both emphasized the fact that the defendant organization seeking removal was subjected to strict funding regulation by the federal government.  See Gurda Farms, Inc. v. Monroe Cnty. Legal Assistance Corp., 358 F. Supp. 841, 847-48 (S.D.N.Y. 1973); Dixon v. Georgia Indigent Legal Servs., Inc., 388 F. Supp. 1156, 1162 (S.D. Ga. 1974).

The Commonwealth's briefs have at times taken the position that when the FCDO engaged in state court litigation, such actions did not "help or assist a federal officer," because § 3599 does not require that the federal government provide counsel in state court post-conviction proceedings.  See, e.g., Mot. to Remand, at 13.  Under this reading of the "acting under" requirement, not only must the person support a federal officer, but the person's specific act must support a federal officer, as well.

To the extent that the Commonwealth maintains this line of argument, the Court rejects it.  Whether the FCDO's acts allow for federal removal is a separate question, one that is

24

analyzed when the Court considers whether the proceeding relates to an "act under color" of federal office.  See, e.g., Jefferson County v. Acker, 527 U.S. 423, 431 (1999).  The Commonwealth has not pointed to any case law that narrowly construes the "acting under" requirement in this manner.  Rather, under the Watson standard, the FCDO acts under a federal agency for purposes of § 1442 by virtue of its support in representing capital habeas petitioners, a task the government would otherwise need to take on itself.

### 3.   The Hearing Was "For or Relating To" the FCDO's Acts Taken Under Color of Federal Office.

Next, the Court must consider whether the PCRA hearing in question was initiated "for or relating to any act" taken "under color" of federal office.  28 U.S.C. § 1442(a)(1).

Unlike ordinary federal question jurisdiction, a court applying the federal officer removal statute may look to a well-pled federal defense to satisfy these jurisdictional requirements.  Removal jurisdiction is established if the notice of removal 1) raises a colorable federal defense; and 2) establishes that the suit is "for an act under color of office." Jefferson County v. Acker, 527 U.S. 423, 431-32 (1999) (internal

25

quotations omitted); <u>see also</u> <u>Mesa v. California</u>, 489 U.S. 121, 138-39 (1989).  The latter requirement is satisfied if the officer raises a colorable assertion of causality between the charged conduct and the asserted official federal authority. <u>Jefferson County</u>, 527 U.S. at 431-32.

Before analyzing whether the FCDO's defenses are colorable, the Court first summarizes the allegations against it.  In its January 10, 2013 Order, the Pennsylvania Supreme Court stated that if the FCDO was not able to demonstrate that its actions were privately financed, it was to be removed as Mitchell's counsel.  Although the Order did not elaborate on its legal reasoning, it specifically referred to 18 U.S.C. § 3599(a)(2), noting that "the authority of the FCDO to participate in this state capital proceeding is not clear." Supreme Court Order, at 2; <u>see also</u> Mot. for Removal, 2-4 (arguing that the FCDO was not authorized to "provide services in state court proceedings," because, under a set of cases analyzing federal law, "the presence of federally-funded FCDO lawyers in this case is unlawful.").

In response, the FCDO challenges the premise of the PCRA hearing, arguing that it relies on erroneous interpretations of federal law.  It contends that both the Commonwealth's motion

and the Supreme Court Order stake their positions on the false premise that a state can disqualify the FCDO as Mitchell's counsel if it is unable to demonstrate that its actions are privately financed.  According to the FCDO, however, this is an incorrect application of federal law.  For instance, contrary to the Commonwealth's position asserting concurrent jurisdiction, the FCDO argues that the CJA does not vest the Commonwealth with a private right of action.  Notice of Removal, ¶ 35, 38.  It also argues that § 3599, properly interpreted, does not prohibit the FCDO's involvement in state court activities.  Id. ¶ 48-53.

It is well established that a defense that the plaintiff has wrongly interpreted a federal statute is a properly pled federal defense.  In Cleveland, Columbus, & Cincinnati R.R. v. McClung, a federal customs collector was accused of violating his federal statutory duties.  The defendant sought federal removal, arguing that the plaintiff erred in his reading of the federal statute, and the Supreme Court found removal jurisdiction was proper.  119 U.S. 454, 460-61 (1886), as described in Mesa v. California, 489 U.S. at 129-30; see also id. (finding that an "assert[ion] that a federal statute does not impose certain obligations whose alleged existence forms the

basis of a civil suit" is "defensive" and "based in federal law").  Such defenses are colorable on the instant facts.[10]

The Court next considers whether the FCDO's notice of removal presents a colorable assertion of causation.  Because it is plausible that the charged conduct (here, the allegations of improper use of federal funds in state court) is related to an asserted federal authority (the FCDO's status as a federal grantee), the Court finds sufficient nexus to satisfy this element.

The FCDO persuasively argues that the PCRA hearing is "for or relating to" an act under color of office.  It is reasonable to conclude that the Commonwealth's motion seeking

_____

[10] The Court pauses on two related arguments made by the Commonwealth:  first, that the FCDO has not pled a colorable defense because both parties agree on the relevant substantive law; and second, that the FCDO's defense is purely fact-based and, as such, does not raise a federal defense.  Tr. Hr'g 6/27/13 29:18-30:1; 27:13-25.  The Court rejects both arguments. Although the parties agree that the FCDO can proceed in state court if it demonstrates that its activities are privately financed, it is clear that the parties do not agree on what should result if the FCDO does not make such a demonstration. After all, the Commonwealth's position is that a court can remove the FCDO as counsel, and the FCDO's position is the opposite.  As to the contention that the FCDO's defense is solely fact-based, this is not true.  The FCDO has put forth a number of theories of law under which it believes it can prevail, including whether the Commonwealth's allegations can survive the private right of action and preemption doctrines.

the FCDO's disqualification, as well as the resulting Supreme Court Order, were initiated as a result of the FCDO receiving federal grants to represent Mitchell in federal court.  But for the FCDO's status as court-appointed counsel under § 3599, the Commonwealth would have no basis upon which to claim that the FCDO had violated any law, federal or otherwise.

The Supreme Court's recent decision in Jefferson County v. Acker is on point.  527 U.S. 423 (1999).  There, the county sought to invoke its "license or privilege tax" on resistant federal judges.  Id. at 428.  When the judges sought to remove the county's enforcement proceedings under § 1442, the county argued that, because the suit was against the judges in their personal capacity for failing to pay a personal tax, the judges had not shown that the suit had a sufficient causal connection to an official act.  The Court held that, "read literally," it was plausible to find that the tax was levied "for" the judges' choice to engage in their occupation, which gave rise to a colorable causal nexus.  Id. at 432-33.

Both the Commonwealth's motion and the Supreme Court Order make numerous references to the FCDO's status as a federal grantee in the course of concluding that a hearing should be held, and a penalty levied, against it.  Especially when

compared to the nexus asserted in <u>Jefferson County</u>, the Court finds ample reason to find that the PCRA hearing was initiated "for" an act under color of federal office.

The Court holds that the elements of removal jurisdiction under 28 U.S.C. § 1442(a)(1) and (d)(1) are satisfied.  The PCRA hearing is a proceeding that issues, or seeks the issuance of, a judicial order requiring testimony or documents from the FCDO. It is directed at the FCDO counsel, a person acting under the Administrative Office of the United States, a federal agency. Finally, because the FCDO has asserted federal defenses that are sufficiently connected to its status as a federal grantee, the proceeding involves acts taken under color of federal office.

B.   <u>Timeliness of Notice of Removal</u>

Having determined that it has proper removal jurisdiction over the PCRA hearing, the Court turns to procedural concerns.[11] The Commonwealth has raised a timeliness objection to the hearing's removal to federal court.  It argues that the FCDO's

---

[11] Section 1446(b)'s thirty-day time limit for removal is a procedural provision, not a jurisdictional one.  <u>Farina v. Nokia Inc.</u>, 625 F.3d 97, 114 (3d Cir. 2010).

filing of its notice of removal was untimely, in violation of 28 U.S.C. § 1446(b) and § 1446(g).

A defendant generally has thirty days from receipt of the initial pleading to file a notice of removal.  28 U.S.C. § 1446(b).  However, under § 1446(g), if the proceeding at issue is one in which, pursuant to § 1442(a), "a judicial order for testimony or documents is <u>sought or issued or sought to be enforced</u>," the removing party may file a notice of removal "not later than 30 days after receiving, through service, <u>notice of any such proceeding</u>."  28 U.S.C. § 1446(g) (emphasis added).  Both parties agree that § 1446(g) is applicable in the instant case.

The Court finds that the FCDO's notice of removal, filed on April 5, 2013, was timely under 28 U.S.C. § 1446(g).  The FCDO removed the hearing two days after it received an order from the PCRA court setting the hearing for a date certain.  Applying the language of § 1446(g), the FCDO filed the notice of removal less than thirty days after receiving notice of a proceeding in which testimony or documents were sought from the FCDO.

The Commonwealth contends that the FCDO's notice of removal was untimely because there were at least two earlier

31

triggers of the clock that caused the thirty-day period to begin to run, and, after thirty days, to expire. Specifically, it argues that the requirements of § 1446(g) were satisfied on October 16, 2012, by way of the Commonwealth's filing its motion to remove the FCDO as counsel; and/or on January 10, 2013, by way of the Supreme Court Order remanding the case to the PCRA court. The thirty-day clock for removal had thus expired well before the FCDO filed its notice on April 5, 2013.

The Court rejects this argument. Putting aside whether the two orders afforded the FCDO sufficient notice to satisfy the requirements of § 1446(g) – which, as the Court will discuss later, leaves room for doubt – the statute contemplates the ability of the removing party to "re-trigger" the thirty-day period under certain circumstances. Under § 1446(g), a notice of removal is timely if it is filed within thirty days of receiving notice that a judicial order for testimony or documents is "sought," or "issued," or "sought to be enforced." 28 U.S.C. § 1446(g). By its terms, the statute contemplates that the same § 1442(a) proceeding could be removed at more than one juncture. For example, a federal recipient of a subpoena could properly remove the proceeding after receiving notice of the original subpoena, but it could also properly remove the

32

proceeding upon notice of the issuance of a court's order for its testimony.

The statute's legislative history supports this reading. Section 1446(g) was drafted at the request of the Department of Justice to "maintain the current and longstanding [Department of Justice] practice of resetting the 30-day removal clock for cases that involve the enforcement of a subpoena." H.R. Rep. No. 112-107, at 6-7 (2011-12). The House Report explained that because the Justice Department typically ignored subpoenas in the first instance, the Department wanted to maintain its ability to "re-trigger" the removal period when it received notice of a party's motion to enforce, the point at which the Department could no longer ignore the subpoena. Id.

Congress intended to provide a federal officer with an opportunity to remove a proceeding when it would be clear that it needed to take action, even if it meant "re-set[ting]" the clock to allow for a second or third chance. Regardless of whether the FCDO could have removed the proceeding at an earlier time, its clock was re-triggered on April 3, 2013, when it was given notice that a hearing requiring its production of documents and testimony had been scheduled.

Allowing for such a re-trigger is especially appropriate in light of the imperfect notice afforded to the FCDO by the earlier "triggers."  Section 1446(g) contemplates the removal of a proceeding once the federal officer receives "notice" that it will be asked to produce testimony or documents.  It is doubtful that the Commonwealth's motion to remove the FCDO as counsel, filed on October 16, 2012, placed the FCDO on sufficient notice.  That motion argued that the FCDO should be removed as Mitchell's counsel because it lacked authority to present itself in state court, and the FCDO's response to the motion was comprised of legal arguments only.  At no point did the Commonwealth explicitly request that the FCDO produce documents or testimony.

It is a closer issue whether the Pennsylvania Supreme Court's January 10, 2013 order calling for a fact-specific hearing gave sufficient notice to the FCDO.  The Supreme Court Order, which instructed the PCRA court to make a determination on whether "the FCDO used any federal grant monies to support its activities in state court in this case," alerted the FCDO to the eventual necessity of producing documents and testimony to the PCRA court.  However, the Order was not self-executing and it was not directed to the FCDO; it required a second step by the PCRA court to determine how to proceed.  The Order did not

34

require that the FCDO take any particular action, and the FCDO did not act until the PCRA court issued its letter on March 19, 2013, asking the parties how they wished to proceed.  Tr. Hr'g 6/27/13 43:10-20.

Even if the Supreme Court Order afforded adequate notice under the language of § 1446(g), it does not defeat the timeliness of the FCDO's notice of removal.  The statute contemplates a "re-trigger" of the removal clock, allowing a federal officer to remove a proceeding upon receiving notice that a judicial order for testimony or documents is "sought," or "issued," or "sought to be enforced."  Because the FCDO's notice of removal was filed within thirty days of receiving notice of the PCRA hearing date, the FCDO properly removed the proceeding to federal court.[12]

---

[12] The Commonwealth has asked in the alternative that the Court abstain from this proceeding on Younger abstention grounds, but the Court will deny this request.  Jurisdiction under the federal officer removal statute is mandatory, not discretionary, and a district court may not invoke Younger abstention in this context.  See, e.g., Kolibash v. Comm. on Legal Ethics, 872 F.2d 571, 575 (4th Cir. 1989); Jamison v. Wiley, 14 F.3d 222, 239 (4th Cir. 1994); see also Puerto Rico v. Marrero, 24 F. Supp. 308, 311 (D.P.R. 1985).

V.   FCDO's Motion to Dismiss

     Having denied the motion to remand, the Court considers
the FCDO's motion to dismiss under Fed. R. Civ. P. 12(b)(6).
The FCDO argues that the federal statutes that the Commonwealth
seeks to enforce do not create a private right of action, and
that calling the proceeding an attorney disqualification
proceeding that incorporates federal law does not change the
analysis.  Alternatively, the FCDO argues that even if a state
code of professional conduct could incorporate federal law, a
state law purporting to incorporate the CJA and § 3599 would be
preempted because it would frustrate the accomplishment and
execution of the full purposes and objectives of Congress in
passing those statutes.  The Court agrees with both of the
FCDO's contentions.[13]


     A.   State Enforcement of Federal Law

     A private party asserting that a federal statute has been
violated does not automatically have a right to seek enforcement
of that statute.  Stoneridge Inv. Partners, LLC v. Scientific-

_____

     [13] Because the Court reaches its decision on the motion to
dismiss, it need not resolve the FCDO's motion in the
alternative seeking a stay in the proceeding under the doctrine
of primary jurisdiction.

Atlanta, Inc., 552 U.S. 148, 164 (2008).  A party may pursue a judicial remedy for that violation only if Congress has either expressly or implicitly created a private right of action.  Id.; see also Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001). Because neither the CJA nor § 3599 creates an express private right of action, private enforcement of those provisions is only permissible if there exists an implicit private right of action.

The touchstone of an implied right of action analysis is Congressional intent.  McGovern v. City of Phila., 554 F.3d 114, 119 (3d Cir. 2009).  In the Third Circuit, courts perform a two-step inquiry: "(1) whether Congress intended to create a personal right in the plaintiff; and (2) whether Congress intended to create a personal remedy for that plaintiff."  Id. at 116.

There is no evidence to suggest that Congress intended to create a right or remedy to enforce the provisions of the CJA and § 3599.  Section 3599 confers on indigent death-sentenced inmates the right to counsel in federal habeas proceedings, and the CJA sets forth the administrative regime by which the federal government provides such counsel.  Under this regime, Congress has delegated to certain federal entities (most prominently the Administrative Office) the responsibility for

administering and monitoring the grants that pay for such counsel.  See, e.g., 18 U.S.C. § 3006A(i); id. § 3006A(h).

Courts have held that in cases regarding "classic federal funding statute[s]," "inferring a private right of action is disfavored."  Louisiana Landmarks Soc'y, Inc. v. City of New Orleans, 85 F.3d 1119, 1125 (5th Cir. 1996).  Similarly, when a statute explicitly delegates authority to a federal agency to enforce its law, there is a "strong presumption against implied private rights of action."  Wisniewski v. Rodale, Inc., 510 F.3d 294, 305 (3d Cir. 2007).  Because the CJA is both a funding statute and one that authorizes agency enforcement, it is unlikely that Congress intended to create a private right of action for any plaintiff.

It is even more unlikely that Congress intended to create a personal remedy for the Commonwealth, whose interest in this matter is indisputably adverse to that of the petitioners whom the CJA and § 3599 were enacted to protect.[14]  The stated purpose

---

[14] Section 3599, enacted by Congress in 2006, clarified the rights afforded to a defendant who was charged or convicted with a crime punishable by death.  In passing these laws, Congress sought to provide capital petitioners in post-conviction proceedings with experienced counsel and reasonably necessary litigation resources.  See, e.g., 18 U.S.C. § 3599(a)(1)-(2) (capital habeas petitioners entitled to "one or more attorneys" and "investigative, expert, or other reasonably necessary

of the CJA, as set forth in its preamble, is to "promote the cause of criminal justice by providing for the representation of defendants who are financially unable to obtain an adequate defense in criminal cases in the courts of the United States." Pub. L. No. 88-455, 78 Stat. 552; see also United States v. Parker, 439 F.3d 81, 92 n.11 (2d Cir. 2006).  Far from being a member of a class for "whose especial benefit the statute was enacted," the Commonwealth is the direct adversary of the death-row inmates afforded protection under the statute.  Courts are instructed to give this factor special weight in considering whether to imply a private right of action.  E.g., California v. Sierra Club, 451 U.S. 287, 297 (1981).

Counsel for the Commonwealth conceded at oral argument that no private right of action exists under the CJA or § 3599, but contends that this point is irrelevant because the Commonwealth is not bringing a "private" right of action.  Tr. Hr'g 6/27/13 54:13-16.  It argues that because it is acting in the public interest when it disqualifies counsel, it may do so

---

services"); see also id. § 3599(c) (such counsel must have three years of experience in handling felony appeals); id. § 3599(d) (court may appoint a second attorney "with due consideration to the seriousness of the possible penalty and to the unique and complex nature of the litigation.").

for a violation of federal law such as the CJA or § 3599.  The Commonwealth has not provided the Court, and the Court has not independently found, any support for that argument.  The case law in this area supports the opposite conclusion.

The United States Court of Appeals for the Third Circuit, for instance, considered an action in which a state regulatory agency brought an action against an electric company and a federal commission, alleging that an impending shipment of partially irradiated reactor fuel violated federal environmental law.  N.J. Dep't of Envtl. Prot. & Energy v. Long Island Power Auth., 30 F.3d 403 (3d Cir. 1994).  The court held that the federal statute did not create a private right of action.  It noted that the private right of action analysis is the same, regardless of whether the plaintiff is a private party or a government.  Id. at 421-22; see also Astra U.S.A., Inc. v. Santa Clara County, 131 S. Ct. 1342, 1345 (2011) (no private right of action when county sought to enforce a contract that would obligate drug providers to provide lower prices to groups working with the indigent).

To the extent, therefore, that the PCRA hearing is an attempt by the Commonwealth to directly enforce federal law, it

is prohibited from doing so by the private right of action doctrine.

The Commonwealth argues alternatively that even if it cannot enforce federal law directly, it can do so indirectly by incorporating federal law into its rules for professional conduct.[15]  The Commonwealth's position is that the PCRA hearing is an attorney disqualification proceeding against the FCDO, a hearing that would apply state rules of professional conduct that incorporated federal funding regulations.

The provisions of the state rules of professional conduct that the FCDO is alleged to have violated were not specified in any papers filed either in state court or with this Court.  The Supreme Court Order directing the PCRA court to hold the hearing did not explain its authority, state law or otherwise, for

_____

[15] As an initial matter, where courts have acknowledged the ability of state law to incorporate federal law provisions, the cases have involved conventional state law claims such as negligence and contract enforcement – what the Seventh Circuit referred to as "garden variety" claims – that implicated some questions of federal law.  See Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 805-06 (1986); Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 555, 578 (7th Cir. 2012); In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig., 491 F.3d 638, 644-47 (7th Cir. 2007).  In contrast, the instant case contains far more than a federal law ingredient.  But for the FCDO's alleged violations of federal law, there would be no state law basis upon which to claim that it should be disqualified.

ordering the hearing.  The Commonwealth's papers maintained that the FCDO violated certain state laws in the course of its representation of Mitchell, but they did not refer to a particular state law until oral argument in front of this Court.

Counsel for the Commonwealth asserted at oral argument that the hearing was authorized under Pennsylvania Rule of Professional Conduct 8.3(a).  Tr. Hr'g 6/27/13 55:18-21.  Rule 8.3(a) instructs attorneys to inform "the appropriate professional authority" if he or she "knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer."  204 Pa. Code § 8.3(a). Counsel also represented that the charges of dishonesty, lack of trustworthiness or fitness as a lawyer against the FCDO are that it engaged in fraudulent conduct by appearing in state court with federal money and that it misrepresented the nature of its appearance to both the Pennsylvania Supreme Court and the Administrative Office.  Tr. Hr'g 6/27/13, 55:24-56:3.

The Commonwealth's argument is inconsistent with Astra U.S.A., Inc. v. Santa Clara County, in which the Supreme Court considered whether the private right of action doctrine applied to an action based not on a federal statute itself, but on a

contract with obligations deriving from a federal statute.  131 S. Ct. 1342, 1345 (2011).  <u>Astra</u> involved the administration of a federal program under § 340B of the Public Health Services Act (PHSA), in which drug manufacturers received government incentives if they promised to charge a reduced price to certain covered entities.  In addition, drug manufacturers were required to sign a form contract reciting the responsibilities imposed by the statute.  <u>Id.</u> at 1346-47.

When Santa Clara County, which was listed in the contracts as a covered entity, sued a manufacturer for violating the terms of its contract, the manufacturer moved to dismiss the suit based on the private right of action doctrine.  The county argued that the doctrine did not apply because its cause of action derived from the contract, which listed obligations under federal law, and not from federal law directly.

The Supreme Court rejected the county's argument. Because the manufacturers' obligations under § 340B and the contract were "one and the same," and because the source of the contractual terms at issue derived from § 340B, the Court held that they should be subject to the same analysis under the private right of action doctrine.  <u>Id.</u> at 1345.  It concluded:

43

> If [covered] 340B entities may not sue under the
> statute, it would make scant sense to allow them to
> sue on a form contract implementing the statute,
> setting out terms identical to those contained in the
> statute.  Though labeled differently, suits to enforce
> § 340B suits and suits to enforce [contracts] are in
> substance one and the same.  Their treatment,
> therefore, must be the same, no matter the clothing in
> which [they] dress their claims.

Id. at 1345.  Astra rejects a formalistic approach to

determining whether a proceeding falls under the private right

of action doctrine; instead, it instructs courts to look to the

substance of the cause of action at issue.  Id.; see also

Douglas v. Indep. Living Ctr. of S. Cal., Inc., 132 S. Ct. 1204,

1211 (2012).

Just as Astra involved a contract that incorporated

federal terms, this proceeding involves a state disqualification

action that incorporates federal terms.  The Commonwealth's

state law allegations sound solely and exclusively in federal

law.  As the Commonwealth stated at oral argument, its

allegations are all "coming from" the unauthorized use of

federal money.  Tr. Hr'g 6/27/13 56:8-10.  If the Commonwealth

may not sue under the CJA and § 3599, it makes "scant sense" to

allow such an action to proceed under the "dress[ing]" of a

state disqualification proceeding.  Id.

44

Any reference to state law in papers filed by the
Commonwealth, or in the order from the Pennsylvania Supreme
Court describing the hearing to be held by the PCRA court, was
decidedly ancillary.  The Commonwealth's seven-page motion
devoted almost two pages of citations to its allegation that the
presence of federally-funded FCDO lawyers in Mitchell's state
case was unlawful under federal law.  Mot. for Removal ¶ 6.  It
asserted no corollary state law cause of action, and it made no
reference to an attorney disqualification proceeding or to any
violation of the rules of professional conduct.[16]  The motion
offered a single state law citation:  it pled jurisdictional
authority to pursue the matter under Section 10(c) of the state
Constitution, the general provision endowing the Pennsylvania
Supreme Court with the right to govern its courts.  Id. ¶ 7.
Even this citation, however, was secondary to its assertion,

---

[16] In addition, the Commonwealth's motion alleged that the
FCDO's activities violate "the sovereignty of Pennsylvania."
Mot. for Removal ¶ 8.  It cited to a number of cases holding
that states remain "independent and autonomous within their own
sphere of authority," and it asserted that it is a "violation of
the sovereignty" for "lawyers funded by a federal government
agency for the purpose of appealing in federal courts to instead
appear in the state's criminal courts."  Id.  The Court does not
construe these allegations to contain a specific state law cause
of action.

earlier in the paragraph, that it had concurrent jurisdiction to enforce federal law.  <u>Id.</u>

Likewise, the Supreme Court Order made no mention of any state law cause of action, attorney disqualification proceeding, or professional conduct violation.  The only relevant law referred to in the Order was federal.  <u>See</u> Supreme Court Order, at 2 (noting that "the authority of the FCDO to participate in this state capital proceeding is unclear" under § 3599(a)(2)).

In its briefing to this Court, well after it was made aware that the FCDO contested its authority to pursue the proceeding under federal law, the Commonwealth still did not refer to a specific state law authority.  The Commonwealth repeatedly asserted that it had rights under state law, but it did not specify the precise source of those rights:  at one point in its briefing, for example, it asserted that "the relevant court rule is, in essence, simply that there are certain types of statutes that an attorney's ethical duties do not allow him to violate if he wishes to remain in good standing with the court."  Opp. to Mot. to Dismiss at 14.  It was not until the Court held oral argument in June of this year – eight months after the Commonwealth filed its initial papers seeking

46

the FCDO's disqualification – that the Commonwealth raised Rule 8.3(a) for the first time.

Under Astra, the Court is instructed to look to the substance of the Commonwealth's cause of action to determine whether it falls under the private right of action doctrine. The substance of the Commonwealth's motion is that the FCDO's use of federal funds in state court violates federal law.  It fails under the private right of action doctrine, regardless of how it is formulated.

B.  Preemption

Even if the incorporation of the CJA and § 3599 into an attorney disqualification proceeding were not barred by Astra, it would fail on preemption grounds.

Under the Supremacy Clause, Congress has the authority, in exercising its Article I powers, to preempt state law. California v. ARC America Corp., 490 U.S. 93, 100-01 (1989).  In making this determination, "[t]he purpose of Congress is the ultimate touchstone."  Malone v. White Motor Corp., 435 U.S. 497, 504 (1978) (internal citations omitted).

In the absence of an express Congressional statement that state law is preempted, there are two bases for finding

47

preemption.  First, state law is "field preempted" if Congress intends that federal law occupy a particular field.  Second, even if Congress has not occupied the field, state law is "conflict preempted" if it conflicts with federal law such that compliance with both state and federal law is impossible, or if the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." California v. ARC America Corp., 490 U.S. at 100-01; Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372-73 (2000).  The parties agree that the relevant analysis here is conflict preemption.

The threshold question in preemption analysis, including conflict preemption, is whether there should be a presumption against preemption.  Wyeth v. Levine, 555 U.S. 555, 565 (2009); see also id. at 565, n.3.  In two recent cases, the Supreme Court analyzed whether to afford a presumption against preemption and reached opposite conclusions.

In Wyeth v. Levine, the plaintiff sustained injuries after receiving an injection of an antihistamine product manufactured by the defendant, and she sued the defendant under common law negligence and strict liability causes of action. 555 U.S. at 558-59.  The plaintiff claimed that even though the

drug's warning labels had been deemed sufficient by the Food and
Drug Administration (FDA), they failed to provide an adequate
warning of the risks associated with the drug.  Id.  The Supreme
Court held that the plaintiff's failure to warn claims were not
preempted by federal law.  In the course of its analysis, it
afforded the state claims a presumption against preemption.
Because the case involved state regulation of health and safety
matters, "a field which the States have traditionally occupied,"
the Court's preemption analysis began with the presumption that
the state law is valid and that "the historic police powers of
the States were not to be superseded by the Federal Act."  Id.
at 565 (internal citations omitted).

    In Buckman Co. v. Plaintiffs' Legal Committee, however,
the Supreme Court declined to afford a presumption against
preemption when the case involved "uniquely federal interests"
that are "committed by the Constitution and laws of the United
States to federal control."  Buckman Co. v. Plaintiffs' Legal
Comm., 531 U.S. 341, 347-48 (2001).  The Buckman Court
considered a state tort cause of action described as a "fraud-
on-the-FDA" claim.  This claim alleged that medical product-
related entities made fraudulent representations to the FDA and
that these statements allowed the FDA to approve the products

49

for sale and led to the injuries subsequently sustained by plaintiffs.  Id.

In holding that the plaintiffs' claim was preempted, the Court first considered whether the fraud-on-the-FDA claim was entitled to the traditional presumption against preemption.  It held that it was not.  In contrast to situations involving the "historic primacy" of state regulation, "[p]olicing fraud against federal agencies is hardly a field which the states have traditionally occupied."  Id. at 347-48.  A fraud-on-the-FDA claim necessarily implicated the relationship between a federal agency and the entities subject to its regulation, a relationship that is "inherently federal in nature" because it "originates from, is governed by, and terminates according to federal law."  Id.  A state law that disrupts the relationship between a federal agency and the entity it regulates should not be afforded a presumption against preemption.  See also United States v. Locke, 529 U.S. 89, 108 (2000).

The instant facts are closer to Buckman.  This "attorney disqualification proceeding" stems exclusively from the Commonwealth's concern that FCDO attorneys are using federal money in their state court activities, in violation of their obligations under federal law.  This includes its

50

misrepresentation claim:  the allegation is that the FCDO represented to the authorities that it was not using federal money, when in fact it was.[17]  The basic premise of the Commonwealth's claims depends on an interpretation of the CJA, § 3599, and the surrounding body of federal regulations and contracts, the analysis of which Congress has delegated to the Administrative Office.  The Commonwealth attempts to "police" alleged misrepresentations and violations in an area that is within the purview of a federal agency.

Even if the Court were to apply a presumption against preemption, it would still find that the Commonwealth's application of state law is preempted.  See, e.g., Farina v. Nokia Inc., 625 F.3d 97, 117, 123 (3d Cir. 2010) (applying the presumption against preemption but still finding that state law was preempted because it would interfere with the federal

_____

[17] It is also worth noting that this alleged false representation was made in response to the Commonwealth's motion to have the FCDO disqualified.  According to the Commonwealth, then, even supposing that there was no cognizable state interest in reviewing the FCDO's use of federal funds at the time the disqualification motion was filed, the fact that the FCDO opposed the motion gave rise to such an interest.  This argument rests on classic bootstrapping grounds and is of minimal persuasion to the Court.

regulator's determination of how to balance competing policy objectives).

In general, courts have found preemption in two situations.  First, preemption occurs if state law conflicts with a federal law such that compliance with both laws is impossible.  California v. ARC America Corp., 490 U.S. at 100-01.  Second, preemption is necessary when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  Id.; see also Crosby v. Nat'l Foreign Trade Council, 530 U.S. at 373 ("If the purpose of the [federal] act cannot otherwise be accomplished – if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect – the state law must yield to the regulation of Congress within the sphere of its delegated power.").

It is possible for the FCDO to comply with both federal and state law:  it could voluntarily withdraw as counsel from its representation of Mitchell and similarly-situated petitioners in state court.  The Court's preemption analysis therefore turns on the second question, whether the state law stands as an obstacle to Congress's objectives in enacting the CJA and § 3599.

Regulatory situations that require an agency to strike a balance between competing statutory objectives "lend themselves to a finding of conflict preemption." Farina v. Nokia, Inc., 625 F.3d 97, 123 (3d Cir. 2010). In summarizing Supreme Court preemption case law, the Third Circuit observed:

> The reason why state law conflicts with federal law in these balancing situations is plain. When Congress charges an agency with balancing competing objectives, it intends the agency to use its reasoned judgment to weigh the relevant considerations and determine how best to prioritize between these objectives. Allowing state law to impose a different standard permits a re-balancing of those considerations.

Id.

The Third Circuit's concerns are implicated here. By seeking to remove FCDO as counsel based on its independent interpretation of federal law, the Commonwealth attempts to claim a concurrent regulatory function alongside the Administrative Office. This is especially troubling where, as here, the federal scheme developed by Congress is comprehensive and implicates the balancing of multiple competing policy objectives.[18]

---

[18] The Administrative Office, under the authority of the Judicial Conference, has developed an intricate regulatory system to fulfill its responsibilities under the CJA. 18 U.S.C. §§ 3006A(g); (i). Through its Guidelines and contracts, it sets forth the terms and conditions of grant usage, requires annual

53

In the first instance, the Commonwealth's proposed proceeding will seek to interpret the CJA on strict facts, whereas the Administrative Office's analysis would also consider the implicated legal and policy questions.  In making funding decisions, and in deciding upon remedies for violations thereof, the Administrative Office must consider a number of priorities.  Some of the objectives at stake include fiscal responsibility, maintaining high-quality representation for death-sentenced inmates, avoiding over-deterrence of performing tasks that may be helpful in federal representation, and maximizing efficiency in the administration of the § 3599 program.  In Mitchell's case, for example, the FCDO engaged in investigative tasks in the course of preparing its PCRA appeal brief; whether these activities are "reasonably necessary" to providing federal

---

audits to ensure adherence, and describes the set of available remedies if an organization violates its terms.

In addition to this regulatory process, the Commonwealth has proposed that a parallel, and completely distinct, process be administered through the court system.  Thus, the issue is not merely whether the PCRA hearing would conflict with the Administrative Office's check writing duties, but rather whether it would conflict with the Office's responsibility in overseeing the regulatory system set forth under the CJA, § 3599, and the surrounding body of regulatory guidelines and individual contracts.  For that reason, the Court rejects the Commonwealth's position that there is no conflict between the Office's authority to pay attorneys and the inquiry of the PCRA hearing.  E.g., Opp. to Mot. to Dismiss at 18-19.

habeas representation, such that they can be properly "charged"
to the federal government, involves the balancing of competing
policy objectives delegated by Congress to the Administrative
Office.

The potential for intrusion increases if the PCRA hearing
would reach one conclusion as to whether a violation of the CJA
occurred, and the Administrative Office would reach another.  At
oral argument, counsel for the Commonwealth maintained its
position that the state court is not "bound by the
Administrative Office's finding" to the contrary.  Tr. Hr'g
6/27/13, 71:10-72:2.  The reality is that a court could find the
FCDO to have violated federal law and disqualify the FCDO from
representing Mitchell in state court, even though the FCDO has
acted in a manner entirely consistent with the Administrative
Office's interpretation.  See, e.g., Arizona v. United States,
132 S. Ct. 2492, 2503 (2012) (noting that permitting "mirror
image" state immigration statutes would give the state the
"power to bring criminal charges against individuals for
violating a federal law even in circumstances where federal
officials in charge of the comprehensive scheme determine that
prosecution would frustrate federal policies"); see also Nathan
Kimmel, Inc. v. DowElanco, 275 F.3d 1199, 1207 (9th Cir. 2002).

This problem is further exacerbated if different state courts were to reach conflicting conclusions on the issue.  The Administrative Office's delegated powers under the CJA extend not only to the administration of funds in this district, but to judicial districts nationwide.  If it was forced to navigate its funding through a system in which some states penalized CDOs for using federal funds in certain state court activities and others did not, its ability to administer funding would be impaired.  Cf. Buckman, 531 U.S. at 350 ("As a practical matter, complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes will dramatically increase the burdens facing potential applicants.").

Finally, there exists the high likelihood of conflict in the difference in remedy.  The Commonwealth has stated that as a result of the FCDO's failure to comport with its federal funding obligations, it seeks as a "remedy" the FCDO's removal as Mitchell's counsel.  Mot. for Removal, at 1.  According to the Administrative Office's regulations, however, the Administrative Office would not fashion such a remedy.  Instead, the Guidelines state that the Administrative Office has the ability to "reduce, suspend, terminate, or disallow payments under th[e] grant award as it deems appropriate."  Guidelines at 9.

56

The Supreme Court has held that "conflict is imminent whenever two separate remedies are brought to bear on the same activity." Wisconsin Dep't of Industry, Labor, and Human Relations v. Gould Inc., 475 U.S. 282, 286 (1986) (internal citations omitted); see also Crosby v. Nat'l Foreign Trade Council, 530 U.S. at 380 (holding that the "inconsistency of sanctions . . . undermines the congressional calibration of force."). The Commonwealth's position raises the very real specter that the proposed state proceeding will impose a punishment far harsher than those contemplated by Congress. Notably, the Administrative Office's usual remedies, such as recoupment of distributed funds, are more consistent with the CJA's objectives because they mitigate the disruption to the existing attorney-client relationships.

The Court rejects the Commonwealth's contention that these conflicts are illusory. The Commonwealth's position rests on the premise that the PCRA hearing is fact-based and does not necessitate interpretations of federal law. It is apparent that fact-finding in and of itself cannot resolve the issues at stake in the PCRA hearing.

An appropriate order shall issue separately.